IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00867-MSK-KLM

MEDCORP, INC., an Ohio corporation,

        Plaintiff and Counterdefendant,

v.

PINPOINT TECHNOLOGIES, INC., a Delaware corporation, and
ZOLL DATA SYSTEMS, INC., a Delaware corporation,

        Defendants and Counterclaimants.

_____

**OPINION AND ORDER DENYING
MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Combined Motion for Summary Judgment **(#40)**, to which Plaintiff MedCorp, Inc. ("Medcorp") responded **(#15)**, and Defendants replied **(#54)**. Having considered the same, the Court

**FINDS** and **CONCLUDES** that

### I.  Jurisdiction

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

### II.  Issues Presented

This case arises out of a contractual relationship between MedCorp and Zoll Data Systems, Inc., formerly known as Pinpoint Technologies, Inc., (collectively, "Zoll").  MedCorp asserts three claims: (1) that Zoll breached an initial software licensing agreement between the parties (the "Licensing Agreement"), as well as an alleged agreement that arose out of

1

negotiations about Zoll's performance under the Licensing Agreement (the "Alleged Agreement")[1]; (2) that Zoll defrauded MedCorp in negotiating the Alleged Agreement; and (3) that Zoll breached the covenant of good faith and fair dealing in failing to perform under the terms of the Alleged Agreement.

Zoll moves for summary judgment on all of MedCorp's claims. With regard to breach of the original Licensing Agreement, Zoll argues that no breach occurred and that any claim is barred by the statute of limitations. Regarding breach of the Alleged Agreement, Zoll argues that MedCorp cannot demonstrate any element of the breach of contract claim, most pertinently that an enforceable contract was created. As to the fraud in the inducement claim, Zoll argues that MedCorp cannot demonstrate any element of the claim, and that the economic loss rule precludes recovery on the claim. With respect to the claim for breach of the covenant of good faith and fair dealing, Zoll argues that the Alleged Agreement is not an enforceable contract, and alternatively, that the doctrine is inapplicable. Finally, Zoll argues that MedCorp cannot demonstrate an entitlement to punitive damages. As will be evident *infra*, it is not necessary to address all of these arguments.

### III. Material Facts

Having reviewed all of the parties' submissions, and having construed any disputed fact most favorably to the non-movant, the Court finds the material facts to be as follows.

In early November 1998, MedCorp and Zoll entered into the Licensing Agreement under

---

[1] At the core of this controversy is whether there was a subsequent agreement between the parties that resolved their dispute as to Zoll's performance under the Licensing Agreement. For ease of reference, the Court has used the denomination of "Alleged Agreement", but in doing so makes no assumption or finding as to whether there was an enforceable contract or what its terms were.

which Zoll supplied and maintained certain software.  Medcorp began reporting problems with the software to Zoll in January 1999.  Four years later, MedCorp formally notified Zoll that these software problems constituted a breach of the Licensing Agreement, and Medcorp demanded that Zoll resolve the problems.  In response, Zoll sent a letter to MedCorp that proposed remedies for MedCorp's problems and suggested that the two companies work together to resolve the issues.

Over the next few months, the parties engaged in extensive negotiations regarding MedCorp's problems with the software.  Finally, in November 2003, MedCorp notified Zoll that in order to move forward, it needed assurances that its three major problems with the software would be resolved in a timely manner.  MedCorp stated that with these assurances, it would be willing to purchase additional software licenses from Zoll.  In its response, Zoll again set forth proposed remedies for the software problems, but cautioned that it could not guarantee that the proposed remedies would be fully operational within the two year time frame requested by MedCorp ("Zoll's December Letter").  Zoll stated that it intended that its "commitments" would would commence after an agreement for an additional 22 licenses was signed, which it anticipated would be by January 2, 2004.

Three weeks after the date specified by Zoll, MedCorp faxed a copy of a signed document entitled "Software Licensing Agreement" which addressed the additional 22 licenses (the "Additional Purchase").  The fax cover sheet accompanying this document expressed MedCorp's belief that the purchase was premised on Zoll's representations as to remedies made in Zoll's December Letter.  On the same day, Zoll sent a letter to MedCorp clarifying the pricing and other terms of the Additional Purchase because such terms were "outside the realm of our

general contract." The Additional Purchase categorized the order as an "Upgrade Order" and included language stating that the customer's signature constituted an acknowledgment that the customer read and understood the terms and conditions of the agreement and those that were separately executed. Under the Additional Purchase, MedCorp paid Zoll a purchase price of $100,512.50.

Almost two years after the Additional Purchase, MedCorp again notified Zoll of its dissatisfaction with Zoll's failure to remedy problems with the software. Another year of negotiations between the parties regarding these problems and Zoll's suggested remedies followed. Ultimately, MedCorp concluded that Zoll was unable to fix the problems. MedCorp proposed a settlement to Zoll under which Zoll would provide interim support and licenses during MedCorp's transition to another software system and Zoll would pay the full $510,000 purchase price of the new software system. Zoll responded that it would support MedCorp's transition, but would not provide any financial compensation to MedCorp. Zoll also reminded MedCorp of the provision in the original Licensing Agreement disclaiming all warranties with respect to the software. Unable to subsequently agree on a settlement, MedCorp initiated this lawsuit.

### IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the moving party does not have the burden of proof at trial, it may point to an absence of sufficient evidence to establish the claim that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim, the claim must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### V. Analysis

A.     Claim 1: Breach of Contract

Zoll seeks summary judgment on MedCorp's claim that it breached both the Licensing Agreement and the Alleged Agreement. MedCorp opposes the motion, arguing that there remain genuine issues of fact regarding each claim. After considering the submitted evidence construed in the light most favorable to MedCorp, the Court concludes that genuine issues of fact exist with respect to the Alleged Agreement, including whether the parties formed an enforceable

5

contract, what its terms were and whether it acts as an accord for the parties' dispute with regard to the Licensing Agreement. Because determination of these issues affects whether the Licensing Agreement was amended or remains as originally executed, summary judgment is not warranted on either claim.[2]

To prove a breach of contract, a party must demonstrate (1) the existence of a contract; (2) substantial performance by the plaintiff; (3) failure to perform by the defendant; and (4) resulting damages to the plaintiff. *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

With respect to the Alleged Agreement, Zoll challenges MedCorp's ability to demonstrate the first element, existence of a contract. Zoll presents three reasons why the Alleged Agreement is not a valid contract: (i) that it lacks consideration as an accord because the underlying claim based on the Licensing Agreement expired under the applicable statute of limitations; (ii) if an accord was possible, the offer made in Zoll's December Letter was not timely accepted by MedCorp; and (iii) Zoll's December Letter is too indefinite to constitute a valid offer. MedCorp responds by identifying facts which it contends establish that an enforceable accord agreement was formed.

It is undisputed that MedCorp purchased and paid for an additional 22 licenses in January

---

[2] The parties have devoted substantial argument to the characterization of the Alleged Agreement. Of critical importance is whether the parties entered into an enforceable agreement and the scope of its terms. If it is deemed to be an accord with regard to prior breaches of the Licensing Agreement, it acts to modify the Licensing Agreement. *See Anderson v. Rosebrook*, 737 P.2d 417, 419 (Colo. 1987); *Bakehouse & Assocs., Inc. v. Wilkins*, 689 P.2d 1166, 1168 (Colo. 1984). If the accord is satisfied, the original obligation and the accord obligation are discharged; if the accord is breached, the injured party may sue under either the original obligation or the accord.

6

2004. Thus, there was at least an "agreement" between the parties. However, the fundamental issue is whether this agreement also contained terms that modified the License Agreement.[3]

Generally, determinations regarding the formation of the contract and what terms the parties intended to include in that contract are matters of fact for the jury. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (1986); *S. Colo. MRI, Ltd. v. Med-Alliance, Inc.*, 166 F.3d 1094, 1099 (10th Cir. 1999) (applying Colorado law); *cf. Specialized Grading Enters., Inc. v. Goodland Constr., Inc.*, 181 P.3d 352, 355 (Colo. 2007) (acknowledging that interpretation of a written contract is generally a question of law for the court). Here, the evidence bearing upon the formation and terms is in dispute.

After complaints that MedCorp had breached the License Agreement, there were extensive negotiations between Zoll and MedCorp with regard to the alleged breach and the means to cure it. These communications continued over a series of years. Ultimately, they resulted in the acquisition of more licenses, but interwoven in communications about such acquisition are references to the prior alleged breach and its cure. The communications between

---

[3] Zoll makes two arguments with regard to statute of limitations. First, that enforcement of a breach of the original Licensing Agreement is barred. *See* Colo. Rev. Stat. § 13-80-101(1)(a). Second, because the statute of limitations had passed before the Alleged Agreement was fully negotiated, it could not constitute an accord. The Court rejects Zoll's reasoning as to the second issue, noting that the effect of an applicable statute of limitations can be waived. Whether it was waived by Medcorp is at the heart of the factual dispute as to the nature and effect of the Alleged Agreement. This gives rise to additional factual issues as to the accrual date for calculation of the statute of limitations for enforcement of the Licensing Agreement as well as whether the statute was tolled in accordance with the doctrine of equitable estoppel. *See Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 611 (Colo. Ct. App. 2008); *Thurman v. Tafoya*, 895 P.2d 1050, 1058 (Colo. 1995); *P-W Invest, Inc. v. Westminster*, 655 P.2d 1365, 1372 (Colo. 1982).

the parties could be interpreted to result in a wholly new contract with regard to the acquisition of licenses, only, an accord that resolved the dispute under the Licensing Agreement, or simply an extension of the Licensing Agreement.  For example, the Additional Purchase document stated that it was an upgrade order and included a provision purporting to subject it to the terms of the original Licensing Agreement, and the original Licensing Agreement applied to all "upgrades".  However, the Additional Purchase was premised upon Zoll's December Letter that purportedly clarified (or modified) two terms from the parties' "general contract", a term that might refer to the Licensing Agreement, and Zoll's commitments to address problems with software acquired under the Licensing Agreement was conditioned upon MedCorp's subsequent acquisition of additional licenses.  Finally, certain terms in the Alleged Agreement differed from those in the Licensing Agreement.  How these communications are construed depends, in part, on the intent of the parties, which presents an issue for trial.

Zoll also argues that MedCorp cannot demonstrate a genuine dispute as to any of the other three elements a breach of contract claim.  How, given the fundamental dispute as to whether the Alleged Agreement is an enforceable contract that acts as an accord to disputes under the Licensing Agreement, it is not necessary to address the remainder of Zoll's contentions.  A trial is required on the breach of contract claim.

       B.       Claim 2: Fraud in the Inducement

Zoll also seeks summary judgment on MedCorp's fraud in the inducement claim.  To establish a claim of fraud, a plaintiff must demonstrate (1) the defendant made a misrepresentation of a material fact; (2) the defendant knew the representation was false; (3) the plaintiff was not aware that the representation was false; (4) the representation was made with

the intention that it be acted upon; (5) the plaintiff acted in justifiable reliance on the representation; and (6) such reliance resulted in damage to the plaintiff. *See J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007); *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). In a fraud in the inducement claim contesting a contract, the reliance element is satisfied if the plaintiff relied on the misrepresentation in entering into the agreement. *See J.A. Walker Co.*, 159 P.3d at 132; *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1004 (Colo. 2008).

Here, Medcorp claims that Zoll made misrepresentations in their negotiations prior to the Alleged Agreement. Interestingly, the evidence pertinent to this claim is the same as that which will be presented to determine the nature and terms of the Alleged Agreement—during their negotiations, what did the parties communicate and what was their intent. Thus the determination of this claim can and should be made at trial.[4]

C.      Claim 3: Breach of Implied Covenant of Good Faith and Fair Dealing

Zoll seeks summary judgment on MedCorp's claim for breach of the implied covenant of good faith and fair dealing. Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *See* Colo. Rev. Stat. § 4-1-304. To maintain a claim for a breach of the implied covenant of good faith and fair dealing, a plaintiff must demonstrate (1) the parties

---

[4] There are two further justifications for deferring the determination of the sufficiency of evidence to support this claim until trial. First, the question of intent is purely a factual determination to be derived largely from the parties communications and behavior. Not only is the question of Zoll's intent disputed, the parties also dispute the significance and meaning of their many communications. Second, this claim anticipates that the action taken in reliance upon the alleged false representations was entry into the Alleged Agreement. To the extent that there is no enforceable contract, there can be no enforceable claim for fraud in the inducement. *See Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1242–43 (10th Cir. 2001).

entered into a contract; (2) the defendant had some discretionary authority to determine the manner or extent of its performance under the contract; and (3) the defendant failed to act in good faith when performing under the contract. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498–99 (Colo. 1995).

As with the fraud claim, the evidence necessary to determine this claim is the same as that to be presented in conjunction with the breach of contract claim. Both this claim and the breach of contract claim require proof of an enforceable contract, the terms of that contract, and performance or non-performance. Indeed, determination of this claim depends upon the finding that the Alleged Agreement is enforceable. This claim can and should be determined at trial.

D.      Punitive Damages

Finally, Zoll argues that MedCorp has failed to adequately establish a triable issue under Colorado's punitive damages statute. *See* Colo. Rev. Stat. § 13-21-102(1). Punitive damages, however, are a remedy, not a claim and, therefore, not subject to summary judgment under Rule 56. If, however, after presentation of the evidence at trial, Zoll remains convinced that MedCorp has not presented sufficient evidence to meet Colorado's standard for punitive damages, Zoll may raise the issue at the charging conference.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **(#40)** is **DENIED**.

Dated this 24th day of September, 2009

                                  **BY THE COURT:**

                                  Marcia S. Krieger
                                  United States District Judge