# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 08-cv-00867-MSK-KLM

MEDCORP, INC., an Ohio corporation,
    Plaintiff,

v.

PINPOINT TECHNOLOGIES, INC., a Delaware corporation, and
ZOLL DATA SYSTEMS, INC., a Delaware corporation
    Defendants

---

## ORDER BY SPECIAL MASTER DENYING MEDCORP'S MOTION AND MEMORANDUM FOR SANCTIONS AGAINST ZOLL

---

This matter comes before the Special Master on Medcorp's Combined Motion and Memorandum for Sanctions Against Zoll (Docket Nos. 141 and 144). Pursuant to the Minute Order of Magistrate Judge Kristen L. Mix entered on October 6, 2009 (Docket No. 149), the Special Master is authorized to enter this order.

Based on the arguments raised in Medcorp's Combined Motion and Memorandum for Sanctions ("Motion for Sanctions"), Defendants' Response to Medcorp's Combined Motion and Memorandum for Sanctions (Docket No. 167) ("Defendants' Response"), and Medcorp's Reply to Defendants' Response to the Motion for Sanctions (Docket No. 177) ("Medcorp's Reply"), the Special Master denies the relief requested by Medcorp, as set forth below.

## I.    Background

This matter arises from Medcorp's allegations pertaining to Defendants' failure to produce Zoll's Latency SOP, or Latency Protocol (Docket No. 141, Exhibit 7), until after Medcorp had taken various lay witness depositions of Defendants' officers, employees, and ex-employees, and an expert deposition of Jeff Parmet. Medcorp asserts in its Motion for Sanctions

that it first learned in a deposition of Ronald Osbourn, taken on June 4, 2009, that sometime in 2005 Zoll had created a Latency Protocol for Defendants' technical support team to use in determining whether a customer's latency problem was caused by Defendants' software or the customer's computer environment. A latency issue is one that involves the slow operation of a computer system. Medcorp characterizes Osbourn's testimony as establishing that Defendants' use of the Latency Protocol showed that their software was the source of Medcorp's problems, and that they knew that to be the case.

In its Motion for Sanctions, Medcorp further argues that its First Request for Production of Documents in various respects requested the Latency Protocol, thereby requiring its earlier production, and that Defendants' conduct in not having produced it earlier has precluded Medcorp from adequately preparing for trial.

Medcorp thus requests that Zoll be sanctioned by the Court entering an Order: (1) allowing Medcorp the opportunity to depose nine prior deponents regarding the Latency Protocol; (2) requiring Defendants to pay the costs and fees associated with the additional depositions; and (3) requiring Defendants to pay the cost and fees relating to the Motion for Sanctions. In the alternative, Medcorp requests that the Court find that: (1) Defendants' software caused Medcorp's problems; (2) Defendants knew this to be the case, and as a consequence Zoll should be required to pay for expenses associated with the production of a forensic copy of the hard drive previously prepared earlier this year in the case; and (3) Defendants should be precluded from presenting any defense based on Medcorp's computer environment.

In their response, Defendants assert that the Latency Protocol in question is nothing more than a bullet list of technical support questions and an accompanying flow chart, that Medcorp has known of its existence since September 29, 2008, and has had it in its possession since July

1, 2009, five months before the deadline to complete discovery in this case, now November 30, 2009. The Defendants assert that the Latency Protocol does not attribute the cause of any performance issues to Defendants' software and does not even pertain to the versions of the software Medcorp used. The Defendants assert that the document describing the Latency Protocol (produced on September 29, 2008) was first used as a deposition exhibit during a deposition of a Defendant representative on January 8, 2009, but that Medcorp did not ask specifically for a copy of it until June 10, 2009, six days after the deposition of Osbourn. After being requested to produce the Latency Protocol on June 10, 2009, Defendants contend that they took far reaching efforts to produce a copy, and did so on July 1, 2009. The Defendants contend that none of Medcorp's document requests specifically requested the Latency Protocol, since the document requests were geared towards documents pertaining to the software versions actually utilized by Medcorp.

In addition to their contentions that the Latency Protocol is not particularly relevant to Medcorp's case, the Defendants point out that Medcorp still has remaining five fact depositions (including a witness who apparently authored the Latency Protocol), plus six hours of Rule 30(b)(6) deposition time in discovery.

## II.    Analysis

### A.    Legal Framework

If a party fails to produce relevant documents which give rise to a request for sanctions, the Court should consider several factors, including (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant. *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992); see also *Gates Rubber Co. v Bando Chemical Industries, Ltd.*, 169 F.R.D. 90, 101 (D. Colo. 1996). No sanctions have been

3

sought by Medcorp under Fed.R.Civ.P. 37(b), in light of the fact that the Court has never ordered the production of the Latency Protocol, and the requests of Medcorp here are not based on any alleged violation of any other discovery order.  See, e.g., *Brandt v Vulcan Inc.,* 30 F.3d 752 (7th Cir. 1994).  While the Court is entitled to award sanctions based on its inherent powers under Fed.R.Civ.P. 26(g), in order to determine the appropriateness of certain sanctions, the Court needs to balance the degree of misconduct evidenced by a party's mental state against the degree of harm which flows from the misconduct.  *Gates Rubber,* 167 F.R.D. at 104.

Based on the application of these legal principles to the facts described in the parties' briefs, as more fully described below, no sanctions against the Defendants are warranted.

### B.      Medcorp's Request for Production of Documents:

Medcorp asserts that it requested the Latency Protocol in its First Request for Production of Documents.  (Docket No. 144, Exhibit 1).  For that proposition, Medcorp cites seven document request numbers, 2, 3, 7, 9, 10, 11 and 12.  With respect to those requests numbered 2, 3, 7, 9, 11, and 12, all such requests are in relation to the licensed software at issue in this case. The undisputed testimony in the record establishes that the Latency Protocol was prepared in conjunction with version 3.8 of Zoll's software, and that the licensed software utilized by Medcorp was version 3.7 and then 3.9.  (Docket No. 167, Exhibit A, Osbourn Deposition, 48:18- 49: 25; Docket No. 167, Brown Affidavit, Exhibit C, paragraph 11).  Hence, I do not find that the Latency Protocol was requested in these numbered requests.

Medcorp also relies on Request for Production No. 10, which requests "all documents relating to the Plaintiff".  Osbourn had the Latency Protocol on his desk at the time he fielded a customer call from Medcorp, and referred to it briefly in the telephone call as a guide.  (Docket No. 167, Exhibit A, 189:10-190:2).  There is no other meaningful evidence before me as to the

Latency Protocol's specific use relative to Medcorp.  Based on this evidence, an interpretation of Request no. 10 to include such a document would be overly broad.  Hence, I do not find that the Latency Protocol was requested in Medcorp's First Request for Production of Documents.

### C.    Production of the Latency Protocol:

As is often the case in litigation, documents which have not been specifically requested previously in discovery are referenced in a deposition, and requested by one party from the other. The party from whom the document is requested will then, without requiring another formal production request, undertake a search for it, and if it is located, more often than not provide it. The fact that Defendants here were asked for the Latency Protocol under such circumstances, looked for and eventually found it, and then produced it, is not evidence of contumacious conduct.  Based on the record before me that, in sum, is what occurred here.

In support of its position, Medcorp references an e-mail memo dated November 29, 2005, from Ron Osbourn to Vane Clayton (Docket No. 144, Exhibit 11), in which Osbourn describes a conversation with Medcorp and references that Zoll has been "going through the latency protocol" to identify issues and that Osbourn was "heading down the path of confirming that they had completed the latency protocol" when he then asked a specific question of Medcorp regarding the size of their database.  It is undisputed that this exhibit was utilized in depositions in advance of Mr. Osbourn's of June 4, 2009.  In Medcorp's Reply, it contends it asked three separate Zoll employees in advance of Osbourn's deposition to review Osbourn's e-mail, but none of them identified the document entitled "Latency SOP".  (Docket No. 177, pages 14-15). From the record before me, it is unclear whether they were asked questions relating to the Latency SOP or Protocol at all.

In any event, the issue came up somewhat more specifically in Osbourn's deposition on June 4, 2009, and the Latency Protocol was requested by Medcorp on June 10, 2009. Defendants then undertook a search for the document, as described in the Affidavit of David Brown (Docket No. 167, Exhibit C). There is nothing in the record to indicate that Mr. Brown's search for the document was anything but reasonable, and when it was discovered, it was produced to Medcorp. As noted above, in order to determine the appropriateness of sanctions, a Court needs to balance the degree of misconduct by the party's mental state. I find nothing in the record which would indicate any bad intent by the Defendants with respect to the issues surrounding the production of the Latency Protocol in this case.

### D.    Significance of the Latency Protocol:

As noted above, it is also necessary that I consider the harm done to Medcorp in determining whether to impose any sanctions against Defendants. In that regard, I have reviewed the Latency Protocol, the deposition testimony before me, and the claims and defenses that have been raised in this case. The Latency Protocol is, on its face, a series of questions that are to be asked of customers who call in and report latency issues with the operation of Defendants' software. I find nothing in the Latency Protocol which actually suggests what the cause of any slowness may be. Rather, it is to be used in order to try to identify a cause. Further, the record before me establishes that it was not designed to be used with the versions of the software employed by Medcorp. In addition, the Latency Protocol appears so otherwise generic in nature that its utilization in depositions before Osbourn's would not appear to have provided Medcorp the ability to establish any relevant facts not already uncovered. To the extent that the use of the Latency Protocol by the Defendants to determine what problems there may have been with Medcorp's system is relevant to the Plaintiff's claims, that use—which appears to have

been minimal, based on Osbourn's deposition – was disclosed to Medcorp in September, 2008 (Docket No. 141, Exhibit 11).

Based on the record before me, the Latency Protocol is a tool which does not appear to establish any significant facts pertaining to Medcorp's claims in this case, or the software with which Medcorp was allegedly encountering problems. In fact, the apparent difficulty that the Defendants had in locating a copy of the Latency Protocol after it was requested speaks to the unremarkable nature of it. Hence, I do not find any prejudice to Medcorp by the timing of the production of the Latency Protocol in this case.

### E.    Remaining Discovery:

At this stage of the proceedings, the creation or use of the Latency Protocol by the Defendants are topics which are at least within the scope of discovery pursuant to Fed.R.Civ.P. 26(b)(1). Currently, Medcorp plans to take five additional Fed.R.Civ.P. 30(b)(1) depositions, including that of Chris Berg, the apparent author of the Latency Protocol, whom I understand is now employed by a third party. In addition, it is agreed that Medcorp has six hours of Fed.R.Civ.P. 30(b)(6) deposition time remaining. In their Reponse, Defendants represent that Medcorp shall be entitled to use as much of that time as is necessary to question Defendants' designee on the Latency Protocol, who will be reasonably prepared to testify about the protocol and the Defendants' use of it. Medcorp thus will have ample opportunity to inquire as to the Latency Protocol in upcoming depositions. Hence, there is no basis to order that Medcorp be given the opportunity to re-depose the nine prior deponents regarding the Latency Protocol. As to the other sanctions requested by Medcorp, I find that there is no basis for the imposition of any of them under the legal tests outlined above.

Accordingly, Medcorp's Combined Motion and Memorandum for Sanctions against Zoll is DENIED in its entirety.

Dated this 26th day of October, 2009

**BY THE SPECIAL MASTER:**


/s/ Kevin D. Allen
Kevin D. Allen