# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 08-cv-00867-MSK-KLM

MEDCORP, INC., an Ohio corporation,
    Plaintiff,

v.

PINPOINT TECHNOLOGIES, INC., a Delaware corporation, and
ZOLL DATA SYSTEMS, INC., a Delaware corporation
    Defendants

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR DISCOVERY SANCTIONS

---

This matter comes before the Special Master on **Defendants' Motion for Discovery Sanctions and Request for Hearing** ("Motion for Sanctions") (Docket No. 154), to which Plaintiff Medcorp, Inc. ("Medcorp") responded (Docket No. 191) and Defendants replied (Docket No. 209). Pursuant to subsequent orders of the Special Master, Defendants submitted additional authority in support of its Motion for Sanctions (Docket Nos. 232 and 233, respectively), and Medcorp submitted supplemental exhibits in support of its position (Docket No. 234). Finally, both parties filed supplemental briefs in support of their positions on March 15, 2010 (Docket Nos. 248 and 249).

Based on the arguments raised in these filings, other pleadings and orders filed in this action, and the arguments of counsel at the hearing conducted on December 16, 2009, the Special Master GRANTS in part and DENIES in part Defendants' Motion for Sanctions, as further outlined below.

### A.    BACKGROUND

    **1.    Factual Disputes Which Frame the Issues:**

On April 28, 2008, Medcorp filed this action, alleging three claims for relief: (1) that Defendant Zoll breached a licensing agreement between the parties (the "Licensing Agreement"), and an alleged agreement that arose out of negotiations concerning the Defendants performance under the Licensing Agreement (the "Accord and Satisfaction Agreement"); (2) that Defendant Zoll defrauded Medcorp in negotiating the Accord and Satisfaction Agreement; and (3) that Zoll breached the covenant of good faith and fair dealing in failing to perform under the terms of the Accord and Satisfaction Agreement. (Compl. with Jury Demand, Docket No. 1). Medcorp asserts damages from 2001 to the present.

The material facts in this case involve the following events. In earlier November 1998, Medcorp and Zoll entered into a licensing agreement under which Zoll supplied and maintained certain software. (Compl., ¶ 10). Medcorp claims that it began reporting problems with the software to Zoll in January 1999, and that over the last eleven years, Zoll's software has performed poorly, causing Medcorp damages. (Compl., ¶¶ 11, 15, 22). Four years after first reporting problems with the software, Medcorp formally notified Zoll that these problems constituted a breach of the licensing agreement. (Compl., ¶ 13). In response, Zoll corresponded to Medcorp and purposed remedies to Medcorp's problems. (Compl., ¶ 14).

In November 2003, Medcorp notified Zoll that in order to move forward it needed assurances that three alleged shortcomings in the software provided by Zoll would be resolved. (Plaintiff Medcorp's Response to Defendant's Motion for Sanctions ("Resp. Br."), Ex. 8). In responding correspondence, Zoll discussed possible remedies for these software problems, but confirmed that there were no specific commitments or timeframes surrounding certain of the problem areas. (Resp. Br., Ex 20). Zoll stated in this letter that it intended that the commitments

it was providing would commence after an agreement for an additional twenty-two licenses was signed.

On January 26, 2004, Medcorp faxed a copy of a signed document entitled "Software Licensing Agreement", addressing the purchase of an additional twenty-two licenses. In the fax coversheet, Medcorp stated its expectation that Zoll would meet its objectives set forth in the December 30, 2003 letter identified above, in conjunction with the purchase of these licenses. (Resp. Br., Ex 9). On that same day Zoll responded to Medcorp, stating that Medcorp was receiving a "one-time pricing concession" with the purchase of the additional licenses because the terms of the purchases were "outside the realm of our general contract". (Resp. Br., Ex 9). It is this additional purchase of the software licenses which Medcorp claims comprises the existence of the Accord and Satisfaction Agreement.

Almost two years after the alleged Accord and Satisfaction Agreement, Medcorp again notified Zoll of its dissatisfaction with Zoll's failure to remedy problems with the software. (Compl., ¶ 22). Another year of negotiations between the parties regarding these problems ensued, leading to the letter from Medcorp to Zoll of April 13, 2007, in which Medcorp made certain suggestions as to how to settle the disputes between the parties. (Motion for Sanctions, Ex. A). In this letter, Medcorp notes, but denies Zoll's claims that the problems Medcorp was having were hardware problems. In this letter, Medcorp makes various settlement demands, including the payment of money, and states that it intended to transition to a new software system. Zoll responded to this letter on May 8, 2007, suggesting that it would support Medcorp's transition to a new software system, but would not provide any financial compensation to Medcorp. Zoll further reminded Medcorp of the limitation of warranties contained in the original licensing agreement signed in 1998 between the parties, that the

hardware network support was excluded from the purchase, and that Zoll was not responsible for the damage it claimed by Medcorp based on this limited warranty. (Motion for Sanctions, Ex B).

While certain facts surrounding the above events are undisputed, including the existence of the Licensing Agreement and the fact that Medcorp paid for the purchase of an additional twenty-two licenses in January 2004, Judge Marcia Kreiger, in her Order Denying Summary Judgment (Docket No. 139) on all claims, noted material factual disputes as to whether the alleged Accord and Satisfaction Agreement is an enforceable contract that acts as an accord of disputes under the Licensing Agreement. With regard to Medcorp's claims that Zoll made misrepresentations in their negotiations prior to this alleged agreement, the Court also notes disputes as to the parties' communications and their intent. Lastly, with regard to the breach of implied covenant of duty and good faith and fair dealing as it pertains to the alleged Accordance and Satisfaction Agreement, the Court found, in denying summary judgment, that the determination of this claim depended on a finding of an enforceable Accord and Satisfaction Agreement, which was in dispute. (Docket No. 139, *See*, *inter alia*, FN 1).

### 2. Motion for Sanctions and Response:

It is within this factual context that the Motion for Sanctions must be considered. In the Motion for Sanctions, the Defendants allege that discovery in this case reveals, beginning around Medcorp's demand letter of April 13, 2007, that Medcorp undertook a process of destroying computers, servers, server configurations, and backup tapes that "constitute the only real evidence" pertaining to what Defendants have contended is the central issue in this case – the performance of Zoll's software on Medcorp's equipment. Defendants contend that, had Medcorp not destroyed this evidence, but instead had fulfilled its obligation to institute a litigation hold after notifying Zoll of its claims (first in 2003, and again in 2007), the parties

would have been able to present verifiable evidence that Medcorp's hardware – and not Zoll's software – was the cause of the alleged performance issues. Accordingly, Zoll seeks the issuance of sanctions against Medcorp, including the dismissal of Medcorp's claims. Additionally, Zoll seeks compensation for its reasonable attorney's fees, forensic imaging costs, travel costs and all other expenses associated with its attempts to extract data from desktop computers at Medcorp during the course of this case that Zoll contends were not the computers used to run Zoll's software during certain relevant time periods. Finally, Zoll seeks the award of sanctions in the form of reasonable attorney's fees and costs associated with the bringing of the Motion for Sanctions.

Medcorp, in response, asserts that the Defendants are not entitled to sanctions because (1) Medcorp did not destroy any information that it was required to preserve; (2) the Court had already previously ruled that Medcorp was in compliance with requisite disclosure of information; (3) Zoll had always known the information regarding Medcorp's hardware; (4) Zoll admitted that Medcorp's hardware was sufficient and (5) Zoll only requested, and the Court ordered, that Zoll be allowed to inspect and copy Medcorp's current computer environment. In its Supplemental Brief in Opposition (Docket No. 248), Medcorp further asserts that, given the claims in the case, it could not have anticipated that Zoll would seek discovery of Medcorp's computer environment prior to its request of production of documents in December of 2008. Medcorp also asserts that Zoll breached the express terms of the Accord and Satisfaction Agreement, which did not implicate issues surrounding Medcorp's hardware. Medcorp further argues that Zoll did not provide any suitable substitute for performance, such as a speedier system that would overcome the latency problems from which Medcorp claims to have suffered

with its system.  Additionally, Medcorp asserts that Zoll only sought information regarding the current computer operating environment.

**B.    FACTS RELEVANT TO MOTION FOR SANCTIONS**

Based on the materials I have reviewed in conjunction with the Motion for Sanctions, I find that the following facts have been established:

1.    On April 13, 2007, Medcorp threatened to bring a lawsuit against the Defendants arising out of the ongoing issues and problems involving the Zoll software that had been licensed by Medcorp.  While this letter disclaimed that there were problems with Medcorp hardware configurations, it acknowledges Zoll's assertions that hardware problems were the cause of performance deficiencies at Medcorp.  (Motion for Sanctions, Ex A).

2.    In response to the April 13, 2007 letter, Zoll asserted to Medcorp that while it makes hardware recommendations to its customers, it does not take responsibility for the performance of its software in client's environments, since the business environment of the clients might have an effect on system performance, and the server and network workstations are located at the client's site.  (Motion for Sanctions, Ex. B).

3.    The Complaint was filed on April 28, 2008, and various factual allegations put at issue alleged performance failures of the Defendants' software in Medcorp's computer environment (Compl., *inter alia*, ¶¶ 11, 13, 22, 30).

4.    At no time did the Defendants submit a letter requesting that Medcorp maintain any hard drives or electronic media upon which electronic data is maintained, either before or after the commencement of the litigation.  However, Medcorp

submitted a litigation hold letter to the Defendants on July 2, 2008. (Motion for Sanctions, Ex P). This letter specifically requested that Zoll not change, modify or destroy any electronic media, including computers on which electronic data may reside.

5.      At no time did counsel for or other representatives of for Medcorp issue specific instructions to employees that any electronic media or data that might be relevant to the issues in this case be maintained.

6.      On December 31, 2008, Defendants submitted a Request for Production of Documents, which included, *inter alia*, the following request:

> Request No. 9:  Zoll requests entry onto the premises for the purpose of inspection and forensic copying of the following:  (a) All servers on which Zoll software and/or database now reside *or have previously resided*; (b) Personal computers at Medcorp that now uses *or has previously used to operate Zoll software*; (c) Components of Medcorp's network over which Zoll software, data or communications *was* or is conveyed.  [Emphasis added]

7.      Discovery disputes arose after the submission of this request for production of documents.  As a result of those disputes, the Defendants filed an emergency motion for relief alleging discovery violations, in which they requested that Plaintiff be required to permit inspection and forensic copying of its computer systems pursuant to Request No. 9 referenced above.  (Defendants' Motion for Relief from Discovery Violations, Docket No. 59).  This resulted in a hearing

before Magistrate Judge Kristen Mix on February 12, 2009. At that hearing, Magistrate Judge Mix observed that the gravamen of the lawsuit involved how the Defendants software worked and that the Defendant must have some sampling of how the software worked on the Plaintiff's system. The Court noted that in order to obtain such a sampling, there was no other mechanism by which the Defendants could show how their software worked on Medcorp's system other than to inspect and copy some of the documents contained on the Plaintiff's system, whether on the work stations or servers. (Motion for Sanctions, Ex. C, p. 9).

8.    In response to the Court's observations, counsel for the Plaintiff asserted that the Defendants had already downloaded certain data associated with a version (3.7) of the software at issue and had knowledge of the dynamics of the operation of that software with the presently existing servers of the Plaintiff. Plaintiff objected at that time to the Defendants downloading Medcorp's systems onto a hard drive, stating that, in order for such a request to be meaningful, Defendants' experts would have to replicate the "entirety of the hardware environment." Plaintiff's counsel contended at that hearing that Defendants would have to take the whole of the Plaintiff's server structure, and all of their work stations, in order to form an opinion about the inter-relationship between Medcorp's systems and the software. (Motion for Sanctions, Ex. C, p. 10-11). The Court nevertheless granted the relief requested by the Defendants at the hearing.

9.    Pursuant to the Court's Order, the parties agree upon a forensic imaging protocol. This protocol was attached as Exhibit A to the Joint Proposed Discovery Order,

(Docket No. 76, Ex. A), adopted by the Court on March 16, 2009 (Docket No. 77). In addition to calling for the complete imaging of two representative workstations, the protocol called for the collection of information on all fifty to seventy five computers in Medcorp's workstation collection. (Docket No. 76, Ex. A). Exhibit A called for the collection of fourteen categories of data from Medcorp's servers.

10. The information requested in the protocol was relevant to the assessment of whether the workstations at Medcorp may have contributed to performance issues. The Defendants provide hardware and software specifications to its customers, listing minimum configurations for the customer's workstations and servers depending upon the customer's usage patterns, and did so here. (Defendants' Reply in Support of Defendants' Motion for Discovery Sanctions ("Reply Br."), Ex. D). Much of the information sought by the Defendants from the workstations subject to the December 31, 2008 request for production was meant to evaluate whether Medcorp's computers met Zoll's minimum requirements. (Reply Br., p. 9-10).

11. The Defendants' expert, Jeff Parmet, pursuant to the forensic imaging protocol, collected configuration and performance data from Medcorp's production system environment on April 6 and 7, 2009. (Motion for Sanctions, Ex E, Rebuttal Report of Jeff Parmet, Materials Reviewed and Analyses Performed, ¶ 4(e)). The terms and conditions of the imaging protocol were fully complied with by Medcorp with respect to the then current computer environment.

12.    While the Defendants were able to collect all configuration and performance data they have requested from Medcorp's computer environment as of April 6 and 7, 2009, the Defendants did not discover that many of the workstations utilized previously by the Plaintiff had been replaced until the Deposition of Jeffrey Jacobs, who supervises Medcorp's Technology (IT) Department, on April 7, 2009.  In this deposition, Mr. Jacobs testified that Medcorp, over a period of two years prior to April 2009, had replaced the PCs utilized to operate Zoll's software, and that a certain number of the old workstations had been destroyed.  (*See* generally, Motion for Sanctions, Ex. D, excerpts of depositions of Jeff Jacobs referenced on pages 9 and 10 of the motion).

13.    The deposition of Mr. Jacobs and subsequent affidavits submitted by Mr. Jacobs and Matt Moenter, another representative of Medcorp, establish that: (1) between April 2007 and April 2008, Medcorp replaced approximately twenty workstations it used for the Zoll billing and dispatch software, and did not preserve any of the hard drives from the workstations that were replaced; (2) between April 2008 and April 2009 approximately twenty-three additional workstations were removed from use, of which four had been utilized to run Zoll software; (3) of those twenty-three workstations, approximately eight of the hard drives were destroyed, ostensibly because they were corrupted to such a degree that they were not usable or readable and fifteen of the hard drives were stored at Medcorp, to be mirror imaged; (4) of the workstations still in use after April 2008, approximately twenty now utilize AR2000 software, which Medcorp used to replace Zoll's software; (5) of those same workstations still in use, about twenty five still run Zoll's dispatch

software, and about thirty five run Zoll's billing software. Based on the sworn testimony of Medcorp representatives, Medcorp disposed of approximately forty-three workstations that may have used Zoll's software since April 2007 of which fifteen of the hard drives remained intact and eight were sufficiently corrupted so as to not be readable. (Motion for Sanctions, Ex. D, Affidavits of Jeff Jacobs and Matt Moetner, Plaintiff's Supplemental Exhibits, Docket No. 234).

14. In late January, 2010, pursuant to my Order of January 5, 2010 (Docket No. 235), Medcorp produced all hard drives that they had identified which may have used to run Zoll software since April, 2007 that still remain in existence. Hard drive images were taken of these hard drives, which have been analyzed by the Defendants' expert, Mr. Parmet. Of these sixteen hard drives produced, one had previously been inspected on site by Defendants, leaving fifteen remaining that had not been previously inspected. Of these, five of the drives were never used to run Zoll software, two would not have operated Zoll software prior to mid 2009, if at all, four other drives had Zoll software installed, and four drives had Citrix client software installed, but not Zoll software.

15. Of the forty-three workstations that may have used Zoll software since April 2007 which have been replaced, Defendants' experts have thus been able to examine four hard drives on which the Zoll software was installed.

16. Medcorp also recycled backup tapes of the database used by Zoll's software. (Motion for Sanctions, Ex. D, 47:24 – 49:3). In addition, it also replaced one of the three servers used by the Zoll Software (the Citrix server) in mid 2007, and

did not retain the old hard drive. (Motion for Sanctions, Ex. E, Attachment G to Parmet Report).

17. To some extent, other relevant information provided by Medcorp supplements that which might have been obtained from review of the destroyed hard drives on workstations previously utilized by Medcorp. For instance, some amount of information regarding workstation configurations still remains, despite the destruction of relevant hard drives. Prior user configuration files still exist on the Zoll application server, which information has been provided to the Defendants. (See Defs' Motion for Sanctions, Ex. E, Rebuttal Report of Parmet, FN 5). In addition, attached to recent supplemental affidavits provided by Medcorp is information produced from purchased Dell computers regarding all of Medcorp's purchases of hardware from Dell. This information provides certain hardware specification information concerning the Medcorp computer environment, including processor speeds and RAM memory limitations. (*See* Plaintiff's Supplemental Exhibits, Ex. 4, Affidavit of Rick Rubinstein, and attach thereto). Mr. Parmet was at least able to cross-reference service tags retrieved from the hard drives recently inspected to those tags found on the list of purchased Dell computers. (Zoll Supplemental Brief in Support of Motion for Sanctions, Ex. 1, p. 6).

18. Notwithstanding, the contentions of Mr. Parmet regarding the failure of Medcorp to keep records of prior workstation configurations, that it has changed network configurations and has provided no documentation of prior network configurations, and has failed to maintained information regarding software and

network topology as well as the configuration of the Citrix server, remain unrebutted. Discovery materials that have been produced have not related to those specific areas of inquiry. (Motion for Sanctions, Ex. E, Rebuttal Report of Parmet, page 16 thereof).

19. The failure of Medcorp to preserve since April 2007 the additional workstations that may have utilized Zoll billing and dispatch software inhibits both the Plaintiff and the Defendants from conclusively determining whether deficiencies in the Medcorp environment were the cause of Medcorp's problems. The actual workstation configuration evidence is the best evidence from which to determine deficiencies, if any, in the environment, and that evidence resides on the workstations' hard drives. Thus, the destroyed evidence was relevant to the material issues of fact in the case.

20. Medcorp did not issue any litigation hold in this case and failed to advise its employees to suspend the deletion of emails. However, there is no evidence presented that any relevant emails in this case have not otherwise been produced. While Medcorp does not deny that it deleted the backup copies of its database, the Defendants have not established that the existence of information in this database, given the other information obtained by Zoll in discovery in the case, is of relevance to any material issues of fact. Medcorp has not violated any discovery order in this case, and there is no substantial evidence that its destruction of hard drives or the recycling of its workstations was anything other than what Medcorp would do in the ordinary course of its business. (Docket No. 234, Affi of Moenter, ¶¶ 11,12; Affi of Jacobs, ¶ 23). Nevertheless, the destruction of the hard

drives in this matter was unreasonable and willful in the sense that Medcorp was aware of its responsibilities to preserve relevant evidence, as revealed by its own litigation hold letter, and failed to take necessary steps to do so.

### C.     LEGAL PRINCIPLES TO BE APPLIED

1.      Spoliation is defined as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or foreseeable litigation. *Cache LePoudre Feeds, LLC v Land-O-Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007). Litigants have a duty to preserve documents that may be relevant to pending or imminent litigation. *Zubulake v UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

2.      As identified in The Sedona Principles, 2nd Edition, 2007, the duty to comply with a preservation obligation is an affirmative duty.  See cmt. 5.c. (the obligation to preserve evidence arises when the party has notice that the evidence is relevant to the litigation or when a party should have known that the evidence may be relevant to future litigation).  Even in the absence of an order to compel, or preserving information, a court has inherent powers to impose sanctions for the destruction or loss of evidence.  *Smith v. Slifer Smith & Frampton/Vail Assoc. Real Estate, LLC*, No. 06-cv-02206, 2009 WL 482603 (D. Colo. Feb. 25, 2009).

3.      Commensurate with a parties' obligation to preserve evidence is the acknowledgement that it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant electronically stored information.  See Sedona Principles, Rule 5.  For example, a policy of recycling backup tapes while litigation is pending does not violate preservation obligations, absent awareness of a reasonable likelihood that specific unique and

relevant information is contained only on a backup tape.  Sedona Principles, cmt. 5.a., illustration i.

4.     In this case, a party's obligation not to destroy evidence is somewhat complicated by the fact that the obligation involves the preservation of electronic media, as opposed to electronically stored information on that media.  Here, the Defendants requested access to the media upon which electronic information was stored.  The Sedona Principles for the most part focus on a party's responsibility to maintain data, as opposed to the media upon which data is stored.  Nevertheless, these principles, and the spoliation doctrine as developed in case law, impose a requirement to also take reasonable steps to preserve the media upon which the relevant data may be located.  Sedona Principles, cmt. 8(a), illustration ii (involving the demonstration of the need to produce a hard drive for mirror image copying in order to obtain confidential design specifications).  The fact that the Scheduling Order in this case (Docket No. 21) does not specifically reference the need to maintain electronic "media" as opposed to electronically "stored information," does not minimize the applicability of the spoliation principles embedded in the Sedona Principles.  The Scheduling Order instructs the parties to abide by the Sedona Principles, and requires that the parties "retain all information pertaining to the architecture of the respective party's computer systems insofar as any of these systems interrupted in any way with the software licensed to Medcorp by Pinpoint/Zoll."  System and performance data stored on discarded or reconfigured workstations and servers qualifies as electronic data of this sort.

5.     Spoliating parties have been found to be responsible for preserving computers and hard drives likely to contain discoverable data once that party is on notice of pending or imminent litigation.  *See, e.g., Arista Records, LLC v. Usenet.com, Inc.,* 633 Fed. Supp. 124 (S.D.N.Y. 2009) (involving sanctions awarded against a party that gave away computers to departing

employees without first backing up those computers and wiping the hard drives). Certainly, the spoliation principles described in *Cache LePoudre Feeds, LLC*, *supra,* and *Zubulake*, *supra,* and the Sedona Principles are implicated in conjunction with any destruction of physical evidence such as a computer workstation, not just the data contained within that workstation. Spoliation is the destruction or significant alteration of any physical evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Kokins v. Teleflex, Inc*., No 06-cv-01018, 2007 WL 4322322 (D. Colo. Dec. 6, 2007) (involving the cutting and alteration of steering cable from a boat involved in a boating accident which gave rise to product liability claim).

6.      The most recent articulation of spoliation principles is found in *Pension Comm. Of the University of Montreal Pension Plan v. Banc of America Sec., LLC, et al*., No. 05 Civ. 9016, 2010 WL 184312 (S.D.N.Y. Jan. 15, 2010) an action involving efforts by investors to recover losses stemming from the liquidation of hedge funds in which they held shares. There, issues arose as to whether Plaintiffs had properly preserved paper or electronic records relevant to their investment in the funds. The Court noted that, with the increasingly complex nature of discovery, a standard of perfection with respect to the preservation of evidence was not required. However, the Court further observed that courts do have the right to expect litigants and counsel to take necessary steps to ensure relevant records are preserved when litigation is reasonably anticipated. Based on an examination of the principles cited in *Zubulake, supra,* the Court found that in order to consider sanctions, the innocent party in the spoliation case must prove that the spoliating party (1) had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) acted with a culpable state of mind upon destroying or losing the evidence; and that (3) the missing evidence is relevant to the innocent party's claim or defenses.

### D. APPLICATION OF LEGAL PRINCIPLES TO THE FACTS

#### 1. Duty to Preserve Evidence at Time of Destruction:

A central issue in this case is whether alleged performance problems with Medcorp's computer system were caused by its hardware and system configuration, or by alleged problems in the software which Medcorp licensed from Zoll. Indeed, in its most recent supplemental brief, Medcorp emphasizes the alleged latency problems with Zoll's software, both before and after the release of the 3.8 version of the software in 2005. (See Medcorp's Supplemental Brief, Docket 248). In its prior Motion for Sanctions with respect to matters regarding the production of a latency protocol by Zoll (Docket Nos. 141, 144), Medcorp also emphasized the significance it attaches to this latency problem in conjunction with the operation of the Zoll software within the configurations of the Medcorp computer system.[1]

The evidence is undisputed that between April of 2007 and April 2008, Medcorp replaced approximately twenty workstations used for Zoll billing and dispatch software, and did not preserve any of the hard drives for the workstations that were replaced. Access to these hard drives was requested in the Defendants' request for the production of documents issued in December of 2008. Unquestionably, by no later than April of 2007 (the first of an exchange of letters took place between Medcorp and the Defendants which explicitly put at issue the hardware configurations of Medcorp), it was reasonably foreseeable that what may be contained on those disposed of hard drives would be relevant to the issues in any pending litigation.

---

[1] Medcorp's conclusion in its supplemental brief that Zoll breached the terms of the 2004 Accord and Satisfaction Agreement, which breach does not implicate Medcorp's computer system, is wholly beside the point. The issue in the Motion for Sanctions involves Medcorp's duty to preserve relevant evidence, given the manner in which the claims and defenses are framed. None of these claims have yet been decided in Medcorp's favor. In addition, while the fact that Zoll may have possessed some knowledge of Medcorp's hardware environment based on having worked with Medcorp on performance issues over the years, such knowledge does not excuse or justify the destruction of evidence contained on destroyed hard drives that is otherwise relevant to the claims in the case.

Hence, Medcorp was under a duty to protect relevant information by at least that point in time. *Cache LePoudre Feeds, LLC v Land-O-Lakes, Inc*., 244 F.R.D. at 620; *See* Resp. Br., p. 6.

Between April 2008 (when the litigation at issue was filed) and April 2009 approximately twenty-three additional workstations were removed from use, of which approximately fifteen remained intact. Apparently, eight of these hard drives were destroyed, ostensibly because they were corrupted to such a degree that they were not usable or readable. Of the fifteen remaining hard drives which were recently imaged and inspected, only a few contained the installed relevant Zoll software. I do not fault Medcorp for producing hard drives that may not have contained the appropriate software. Medcorp was ordered (Docket No. 235) to produce what it had produced, and complied with the order.

Based on this most recent production, I conclude that Medcorp has disposed of approximately forty-three workstations that may have used Zoll software since April 2007, of which fifteen of the hard drives remain intact, and eight were sufficiently corrupted as not to be readable, according to Medcorp. It is difficult to determine from the record exactly which of the forty-three which have been destroyed would have contained the relevant Zoll software but, since twenty were destroyed between April 2007 and April 2008, it can be presumed that many of them would have contained relevant information which has now been destroyed. While Zoll contends that as many as sixty relevant hard drives have been disposed of, the record establishes that approximately forty-three were disposed of. Medcorp was required to maintain them, and it was reasonable for them to do so. Removing the hard drives is a relatively simple task which Medcorp was able to perform with respect to a number of hard drives on its recycled work stations.

With respect to the other evidence which the Defendants suggest has been spoliated in this case, including, the nightly backup tapes and the Citrix server, which Defendants contend was discarded and replaced in 2007, the evidence that these contained relevant information is unpersuasive. Medcorp contends that the servers were not in fact replaced, and that Zoll ran some tests on at least some of the servers. (Resp. Br., Ex. 17, Jacobs Aff.) Medcorp also contends that its backups are cumulative in nature, even if the tapes are recycled. (Resp. Br., Ex. 17, Jacobs Affi.) I do not see in the reports of Mr. Parmet that he has been unable to render opinions based on a lack of access to computer backup tapes or to information on the Citrix server. The duty to preserve this evidence was marginal, at best. Sedona Principles, No. 5. Indeed, the Defendants did have access to performance data through its own QOS timers built into the software, which enable Zoll to determine (over certain limited periods of time) whether the performance of the Zoll software was adequate. (Motion for Sanctions, Ex. D, Rebuttal Report of Parmet, ¶ 5(h)(iii), p. 6).

Mr. Parmet's reports focus in part on the difficulty of reaching conclusions based on Medcorp having destroyed prior workstations and not maintaining records of prior configurations or mirror images which would reveal the workstation configurations. Nevertheless, he was able, based on the information he had reviewed, to assert that Medcorp's expert conclusions are not based on empirical facts and data, do not use industry methodology, and have ignored alternative explanations for the problem with the operation of the software. Moreover, Mr. Parmet was able to employ methodology which, when applied to the facts and data he was able to gather from Medcorp and Zoll, allowed him to conclude that (a) there were no material performance issues at Medcorp and (b) any performance issues that Medcorp may have experienced were likely caused by factors outside of Zoll's control. He further concluded,

within a reasonable degree of professional certainty, that deficiencies in Medcorp's technical environment, not Zoll's software, was the root cause of the majority of Medcorp's performance complaint is from 1998 onward.

## 2. Culpability:

As set forth in *Pension Comm of the University of Montreal Pension Plan, supra,* the culpability of the spoliating party is a significant factor in determining remedies. Here, the actions of Medcorp are insufficient to require the dismissal of this case. While Medcorp did not, through its counsel or otherwise, issue specific instructions requiring its employees to suspend deletion or destruction of electronic information since the lawsuit was filed, it does provide an affidavit of J. Jeffrey Lowenstein, Esq., general counsel of Medcorp since 2006 in relation to preservation matters. (Resp. Br., Ex. 25). According to Mr. Lowenstein, he reviewed and analyzed the Scheduling Order in this case and then analyzed Medcorp existing protocols for the preservation of electronic data. He concluded that the protocols by which Medcorp preserves and protects information for a minimum of six years within its industry were sufficient to comply with the requirement to preserve electronic discovery in this case. While this does not answer the question of the destruction of hard drives at issue, it does distinguish the activities of Medcorp from those of other spoliating parties who consciously make an effort to destroy information in a planned fashion. *See, e.g., Arista Records, LLC, supra.*

In addition, to the extent Medcorp preserved such information that was subject to discovery requests, it has now complied with all other outstanding discovery requests in this case. While this information cannot be considered a substitute for what would have been

contained on hard drives of workstations which were disposed of,[2] Medcorp has nevertheless produced documentary information, both previously and after the filing of the Motion for Sanctions, which supplies some information relevant to the issues about which Defendants claim prejudice. (Resp. Br., p. 10, ¶ 33, referencing production of documents pertaining to the Medcorp network environment, submitted in response to Zoll propounded discovery on May 20, 2009, Medcorp's Supplemental Exhibits, Dell computer records).

3.      **Whether the Missing Evidence is Relevant to the Innocent Party's Claim or Defense:**

Mr. Parmet, in his most recent report submitted as a part of Defendants' Supplemental Brief, concludes that Medcorp failed to preserve enough of the equipment from its technical environment as it existed prior to April 2009 to allow anyone to conclusively determine whether deficiencies in that environment were the root cause of performance problems from 1998 until the time the equipment was replaced. (Defendants' Supplemental Brief in Support of Motion for Sanctions (Docket 249), Ex I). Of the four hard drives recently inspected that did utilize Zoll software, he determined that three did not meet Zoll published configuration specifications, and that one met minimum specifications. Of the four drives recently inspected which utilized Citrix client software, none were compliant with Zoll specifications. This evidence supports a presumption that the hard drives that were disposed of would contain similar evidence. In his initial report, he references the fact that Medcorp destroyed most prior workstations within the past three years, including many in the past one to two years, and kept no records as to the prior configurations or mirror images to preserve the evidence. From this he concludes, *inter alia*, the

---

[2] The document production submitted in response to Zoll's May 20, 2009 discovery request was focused on network configurations, rather than workstation configurations.

Medcorp experts cannot definitively diagnose the performance issues Medcorp alleges it suffered from between 1999 and 2008. (Motion for Sanctions, Ex. E, Analysis, p. 15, 16).

While there is a dispute as to how many of the prior workstations were destroyed, there is no serious dispute here as to whether the missing evidence is relevant to both the claims and defenses in this case. The performance of the workstations prior to 2007 is particularly relevant given the damage assertions of Medcorp, which carry back to 2001. Accordingly, while the spoliating party's conduct here is not sufficiently egregious to justify an imposition of an order dismissing the case, the conduct does warrant permitting the jury to make a presumption of relevance. Given the existence of other evidence in the record which to some extent supplements the information which would be revealed had the destroyed hard drive been maintained, the jury should be further instructed that the spoliating party is permitted to rebut the presumption by establishing that other evidence possessed by Defendants, either before the filing of the case, or obtained during the case, adequately reveals information contained on the destroyed hard drives. See *Pension Comm of the University of Montreal Pension Plan, supra* at *15.

## E. REMEDIES AND ORDER

When deciding whether to sanction a party for the spoliation of evidence, two factors generally carry the most weight: (1) the culpability of the party that lost or destroyed the evidence; (2) the degree of actual prejudice to the other party. *Kokins, supra*, 2007 WL 4322322, at *2 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, No. 97-5089, 1998 WL 68879, at *13 (10th Cir. Feb. 20, 1998). The destruction need not be in bad faith to warrant spoliation sanctions. The remedy of dismissal is not recommended, as it defeats altogether a litigant's right to access the courts. *Ehrenhaus v Reynolds*, 965 F.2d. 916, 920 (10 Cir. 1992). The prejudiced party is not to be held to too strict a standard of proof regarding the

likely contents of the destroyed evidence, in order to prevent a spoliating party from profiting from its destruction. *Residential Funding Corp v. DeGeorge Funding Corp.*, 306 F.3d 99 (2d Cir. 2002). The adverse inference instruction, however, is also an extreme sanction that should not be given lightly. *Zubulake, supra* at *7.

Based on the findings above, and the application of the legal principles referenced herein, it is ORDERED that (1) Defendants' Motion for Sanctions for destruction of evidence is granted in part; (2) the jury be instructed that relevant evidence was contained on computer hard drives that have been destroyed by Medcorp after April 2007. The jury is permitted, but not required, to infer that the hard drives contained in such workstations that were destroyed would have contained evidence unfavorable to Medcorp, and any rebuttal evidence (as described above) submitted by Medcorp is to be considered by the jury, which must decide whether to draw an adverse inference against Medcorp that the destroyed evidence would have been unfavorable to Medcorp; (3) the Defendants' request for an award of their reasonable attorney's fees and costs (including expert costs), specifically incurred in conjunction with the prosecution of the Motion for Sanctions, is granted to the extent of one-half of the reasonable fees and cost incurred; (4) the Defendants' request for dismissal of Medcorp's claims is denied, (5) the Defendants' request for compensation for attorney's fees, forensic imaging costs, travel costs and other expenses associated with the extraction of information from desktop computers at Medcorp during the calendar year 2009, or associated with the extraction of information from the hard drives produced subsequent to the filing of the Motion for Sanctions, is denied. Defendants shall submit a reasonable attorney's fees and cost application in accordance with D.C.Colo.LCivR 54.3.

Dated this 2nd day of April, 2010

**BY THE SPECIAL MASTER:**


/s/ Kevin D. Allen
Kevin D. Allen