IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-00867-MSK-KLM

MEDCORP, INC., an Ohio corporation,

    Plaintiff,

v.

PINPOINT TECHNOLOGIES, INC., a Delaware corporation, and
ZOLL DATA SYSTEMS, INC., a Delaware corporation,

    Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendants' **Motion to Modify Order Granting in Part and Denying in Part Defendant's Motion for Discovery Sanctions and Request for Hearing** [Docket No. 266; Filed April 23, 2010] (the "Motion").  Plaintiff filed a Response in opposition to the Motion on May 14, 2010 [Docket No. 269], and Defendants filed a Reply on June 8, 2010 [Docket No. 294].  The Motion is now ripe for resolution.

    The Motion is an objection to Special Master Kevin D. Allen's ruling that Defendants, while entitled to a jury instruction and expenses to address Plaintiff's spoliation of computer hard drives, were not entitled to more severe sanctions.  *See Special Master Order* [#256] at 23-24.  Defendants do not object to the Special Master's factual findings or to his conclusion that Plaintiff's spoliation of hard drives was both relevant to a material issue and willful in the sense that Plaintiff "was aware of its responsibilities to preserve relevant evidence and failed to take necessary steps to do so."  *See Motion* [#266] at 1-4 (quoting *Special Master Order* [#256] at 13).  Rather, Defendants argue that the levied sanctions do

not go far enough to address the continued prejudice caused by Plaintiff's conduct, in that Defendants are "now left to prove [their] case indirectly and circumstantially." *Reply* [#294] at 4.

Plaintiff responds that "any purported spoliation of evidence by [it] was of considerably more limited import than Defendants contend and in no way warrants dispositive sanctions." *Response* [#269] at 2. In addition, Plaintiff argues that it had no clear obligation to preserve the hard drives at issue, that the destruction of such was based on a good faith belief that the hard drives were not relevant, and although the Special Master found Plaintiff's conduct to be willful in the sense that it should have taken steps to preserve the information but did not do so, such conduct was merely negligent. *Id.* at 4-8.

My review of the Special Master's order is conducted *de novo*. Fed. R. Civ. P. 53(f)(3), (4). As Defendants do not object to the Special Master's factual findings, see *Motion* [#266] at 1, I limit my review to whether the facts, as found by him, justify harsher penalties. *See generally Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins.*, No. 05-cv-01948-PSF-PAC, 2007 WL 1106105, at *1 (D. Colo. Apr. 12, 2007) (unpublished decision) (limiting de novo review to only those issues challenged by moving party). As discussed above, the Special Master held that Plaintiff had unreasonably failed to preserve the hard drives at issue here. *Special Master Order* [#256] at 18-22. Therefore, the Special Master concluded that Plaintiff's conduct was best remedied by a jury instruction "that relevant evidence was contained on computer hard drives that have been destroyed by Medcorp after April 2007" entitling the jury "to infer that the hard drives . . . that were destroyed would have contained evidence unfavorable to Medcorp." *Id.* at 23. He also found that Defendants were entitled to one-half of their expenses in litigating the underlying motion

for sanctions. By contrast, the Special Master rejected Defendants' request for the entirety of such fees and costs, including denial of an amount for Defendants to conduct forensic imaging of Plaintiff's desktop computers, and denied their request to recommend dismissal of Plaintiff's claims. *Id.*

Pursuant to the Motion, Defendants seek modification of the Special Master's order "proportionate with the extreme nature of the misconduct that has given rise to the lengthy proceedings . . . ." *Motion* [#266] at 13. Stated another way, Defendants contend that Plaintiff's "destruction of key evidence, coupled with its steadfast refusal to accept responsibility for its bad behavior, warrants the imposition of the most severe penalties." *Reply* [#294] at 4. Specifically, Defendants seek dismissal of Plaintiff's case or admission of certain facts to Plaintiff's detriment and one-hundred percent of Defendants' expenses incurred in litigating the motion for sanctions. *Motion* [#266] at 12-13. Defendants also seek a hearing to address their Motion pursuant to Fed. R. Civ. P. 53(f)(1). I find that a hearing would not materially assist the Court in resolving the Motion.[1] For the reasons set forth below,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED in part and DENIED in part**.

## ANALYSIS

The parties and Special Master agree that the standard set forth in *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities*, 685

---

[1] Although Rule 53(f)(1) provides an opportunity for hearing, "[t]he requirement that the court must afford an opportunity to be heard can be satisfied by taking written submissions . . . ." 2003 Advisory Committee Notes to Fed. R. Civ. P. 53(g).

F. Supp. 2d 456 (S.D.N.Y. 2010) provides the appropriate analysis regarding the types of sanctions which are justified when a party destroys evidence. Specifically, "[t]he determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Id.* at 469. To this end, "[a]ppropriate sanctions should '(1) deter the parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party."'" *Id.* (citations omitted). Further,

> It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include – from least harsh to most harsh – further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions). The selection of the appropriate remedy is a delicate matter requiring a great deal of time and attention by a court.
>
> . . . However, a terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or intentionally destroying evidence by burning, shredding, or wiping out computer hard drives.

*Id.* at 469-70 (citation omitted).

### I. Dismissal

In this Circuit, the standards for dismissal as a discovery sanction are governed by *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). *See Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994) (noting that the sanction of an "involuntary dismissal[] should be determined by reference to the *Ehrenhaus* criteria"). The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" . . . at issue . . . .'" *Ehrenhaus*, 965 F.2d at 920-21 (citation omitted). In *Ehrenhaus*, the Tenth Circuit enumerated the factors to be considered when evaluating

4

grounds for dismissal as a sanction. The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.*, 167 F.R.D. 90, 101 (D. Colo. 1996). "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).

### A.     Prejudice to Defendants

There can be no dispute that Plaintiff's conduct in destroying approximately forty-three hard drives which contained information relevant to the pending lawsuit has prejudiced Defendants. However, that prejudice can and will be diminished by use of a jury instruction allowing the jurors to infer that the hard drives contained information at odds with Plaintiff's case such that Plaintiff's conduct may be viewed in Defendants' favor. Further, the prejudice is similarly tempered by Plaintiff's production of responsive information that, while not replicating the lost evidence, may be sufficient to replace it. *See Special Master Order* [#256] at 22. I also note that Plaintiff has agreed to "stipulate that some, if not all, of the [destroyed computers] were non-branded," which may prompt the jury to infer that Defendants' software was being utilized on inadequate equipment. *See Response to Motion for Sanctions* [#191] at 13. In addition, while Plaintiff's conduct has caused Defendants to expend unnecessary resources and time to seek resolution of this significant discovery issue, this too can be remedied by an award of expenses, in part or

in whole, to Defendants. Given that the prejudice to Defendants may be remedied, I find that this factor weighs against dismissal.

### B. Interference with the Judicial Process

There also can be no dispute that Plaintiff's conduct interfered with the judicial process. Although not the sole reason for the Court's decision to appoint a Special Master, the emergence of this issue was significant in determining the need to do so in light of the demands of my docket. Were it not for the spoliation, the parties' discovery disputes would have been far less complicated and likely capable of resolution by the Court without the involvement of a Special Master. Moreover, the Court's need to sit in review of the Special Master on this issue further increases the workload of the Court and interferes with the efficient administration of justice. Finally, any time a party destroys evidence presumably at odds with its case, the trial process is hampered because it may result in the jury having incomplete information. While this latter concern may be remedied by a jury instruction or other evidence, it is difficult to qualify or quantify the impact Plaintiff's conduct may have on the jury's decision. Accordingly, I find that this factor weighs slightly in favor of dismissal.

### C. Culpability of Plaintiff

The Special Master found that Plaintiff's conduct is distinguished "from those of other spoliating parties who consciously make an effort to destroy information in a planned fashion." *Special Master Order* [#256] at 20. Further, the Special Master noted that Plaintiff had complied with all outstanding discovery requests and was able, at least in part, to produce information to replace the information that was lost. *Id.* at 21. Finally, the Special Master qualified that while he found the spoliation to be willful, in the sense that

Plaintiff did not do enough to preserve the hard drives, "Defendants have not established . . . that [Plaintiff] has . . . violated any discovery order in this case, and there is no substantial evidence that its destruction of hard drives or the recycling of its workstations was anything other than what [Plaintiff] would do in the ordinary course of business." *Id.* at 13-14.

After my independent review, I agree. Although Defendants contend that Plaintiff engaged in a premeditated "campaign of destroying key," see *Reply* [#294] at 3, I find no clear support for this conclusion in the record. While the Court does not condone the conduct of Plaintiff, namely its ineffective effort to preserve evidence relevant to this case, I cannot say that the destruction of hard drives in the ordinary course of business was done with a sufficiently culpable state of mind to warrant a terminating sanction. Accordingly, I find that this factor weighs against dismissal.

### D.   Advance Notice of Sanction of Dismissal

Although Plaintiff was not warned in advance of the spoliation, Plaintiff has been on notice since the filing of Defendants' motion for sanctions that dismissal was a possible result. Further, while the Court has never threatened Plaintiff with the sanction of dismissal, this penalty is specifically contemplated by the Federal Rules of Civil Procedure and spoliation jurisprudence. Accordingly, I find that this factor, while not directly bearing on whether Plaintiff's conduct was sufficiently egregious to recommend dismissal, would support dismissal if other factors prompted such a result.

### E.   Efficacy of a Lesser Sanction

The sanction of dismissal particularly fails in consideration of this factor. As noted above, the prejudice to Defendants can be diminished by a jury instruction allowing the jury

to infer that Plaintiff destroyed evidence unfavorable to it. The prejudice can also be addressed by compensating Defendants, at least to some extent, for their expenses in litigating the issue of Plaintiff's spoliation. Although Defendants desire a more severe sanction to punish Plaintiff, I am not convinced that anything beyond a jury instruction or monetary penalty is necessary to prevent Plaintiff from repeating its mistake. Further, the jury instruction places the consequences of Plaintiff's conduct on Plaintiff, not on Defendants. In addition, the jury instruction and a substantial award of expenses effectively vindicates Defendants' interest in this matter. *See Pension Comm.*, 685 F. Supp. 2d at 469.

Further, I am mindful that a termination sanction should be employed in only the rarest of circumstances. While the purposeful destruction of hard drives may support a harsher penalty, there is no evidence that Plaintiff's destruction was anything other than inadvertent in the sense that nothing on the record clearly indicates that Plaintiff set out to intentionally destroy evidence relevant to the parties' claims. In addition, it appears that Plaintiff was able to provide substitute information (while not wholly in replacement of the hard drives), which addresses the same issues. Accordingly, a balancing of the *Ehrenhaus* factors does not support the sanction of dismissal and this portion of the Special Master's order is affirmed.

## II. Admission

Defendants seek to have facts admitted into evidence indicating that Plaintiff's spoliation was intentional and knowing, i.e., that Plaintiff purposefully set about to destroy evidence it knew to be relevant to the parties' claims. *Motion* [#266] at 12; *Reply* [#294] at 3. I disagree with Defendant's characterization of Plaintiff's conduct. Rather, I agree with

the Special Master that there is no conclusive evidence that Plaintiff purposefully set about to destroy evidence unfavorable to its position.  Because I find that Plaintiff's conduct was negligent rather than intentional, and because I also find that the jury instruction effectively addresses Defendants' concerns, it is unnecessary to also deem certain facts admitted into evidence.[2]  Accordingly, this portion of the Special Master's order is affirmed.

### III.  Attorneys' Fees and Expenses

Defendants' request for additional expenses appears to be limited to the expenses incurred in litigating the underlying motion for sanctions.  *See Motion* [#266] at 13 (limiting their objection to the fact that the Special Master awarded one-half, rather than all, of Defendants' expenses associated with "enforcing Medcorp's basic obligation to refrain from destroying critical evidence").  Defendants do not appear to challenge the rejection of their request for expenses associated with conducting forensic imaging of Plaintiff's desktop computers.  Accordingly, I limit my review to whether more than a partial fee-shifting award is warranted under the circumstances.

As a preliminary matter, while Defendants prevailed on their motion for sanctions, it cannot be disputed that they did not receive the breadth of the relief that they were seeking.  Undoubtedly, a portion of their time and effort was spent on researching and briefing remedies which both the Special Master and now this Court have found to be

---

[2] The negative inference instruction imposed by the Special Master is suited to accomplish by general terms what Defendants seek to accomplish by specific terms.  In other words, the jury may very well conclude, as a result of being instructed that they may infer that the destroyed hard drives contained evidence which is unfavorable to Medcorp, that the destroyed computers "were inadequately configured to run ZOLL's software [and] the inadequate configuration of those computers was the cause of any slow performance that Medcorp's employees might have experienced while using ZOLL's software."  *Motion* [#266] at 12.  Indeed, because the central issue in the case is the adequacy of Defendants' software, the drawing of such conclusions from the negative inference instruction would be eminently logical.

inappropriate. Further, a review of Defendants' billing records regarding the underlying motion for sanctions does not evidence sufficient attempts at efficiency and the elimination of unnecessary duplication. Moreover, the amount of the fees and costs sought is extraordinarily large when compared to fees and costs awarded as sanctions in other spoliation cases. *See, e.g.*, *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78-79 (S.D.N.Y 1991); *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 132 F.R.D. 523, 524 (D. Ariz. 1990); *Asher Assocs., LLC v. Baker Hughes Oilfield Ops., Inc.*, No. 07-cv-01379-WYD-CBS, 2009 WL 1328483, at *12 (D. Colo. May 12, 2009) (unpublished decision). While the Court understands defense counsels' desire to litigate the matter zealously and thoroughly, too much time and money was spent on this matter.

Nevertheless, I disagree with the Special Master that it is appropriate to award a predetermined percentage of fees and costs here. Instead, in light of Defendants' victory, the nature of the wrongful conduct and the central importance of the destroyed evidence, I find that an award of Defendants' *reasonable* fees and costs is appropriate. Defendants had no choice but to aggressively litigate the spoliation issue given the central importance of the evidence to defense of Plaintiff's allegations against them. Accordingly, this portion of the Special Master's order is reversed. While there is no absolute formula to assess how much of Defendants' fees and expenses were reasonably incurred, the answer is clearly not $130,276.13 (the amount requested by Defendants in their application before the Special Master). *See Application* [#265] at 2; *Reply* [#277] at 12.

Given my reversal of this portion of the Special Master's order, I *sua sponte* vacate the Special Master's award of $52,825.06 to Defendants. *See Special Master Award* [#293] at 8. As indicated above, instead of reducing the fees and expenses incurred by a

certain percentage, I start from the premise that all *reasonable* attorneys' fees and expenses incurred should be awarded to Defendants, in light of the significance of the spoliation issue to their defense and their lack of other options to address it. *See, e.g.*, *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 523-24 (D. Md. 2009) (noting that where motion is granted in part, court may apportion those expenses that are reasonably incurred in reaching the result obtained); *Harkins*, 132 F.R.D. at 524 (reducing expenses sought where duplication made total expenses incurred unreasonable).

Second, rather than "apportion[ing] the fee award mechanically" by "attempt[ing] to identify specific hours that [could] be eliminated," I exercise my "discretion in making this equitable judgment" by determining the amount that is reasonable overall. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 436-38 (1983) (noting that court is not required to reach a lodestar determination in every instance; rather, court may simply accept or reduce fee requested within its discretion). As such, I consider the amount of money spent, the history of the dispute, the level of success obtained and the significance of the issue to the injured parties' ability to litigate their case. *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257, 1259 (10th Cir. 2005) (permitting Court to reduce amount of fees claimed where billing judgment is in doubt); *White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute).

Quite simply, "[i]t does not [always] follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (emphasis added). Based upon my twenty-five years of combined private and judicial experience and my careful review of Defendants' counsel's billing records, I find

that Defendants' attorneys' fees in the amount of $75,000 are reasonable, that Defendants' costs in the amount of $3,642.38 are reasonable, and that Defendants' expert witness expenses in the amount of $10,753.50 are reasonable.[3]  Hence, Defendants are awarded the sum of **$89,395.88** for their reasonable costs and attorneys' fees incurred in litigating the spoliation issue. This reduction from the $130,000 claimed by Defendants takes into account that while Defendants were successful on a significant issue, too much time was spent by defense counsel on the matter, Defendants did not obtain all of the relief they were seeking, and the wrong has been at least partially remedied by other means.

Dated:  June 15, 2010

BY THE COURT:

s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix

---

[3] I adopt the reasoning of the Special Master regarding costs and expert witness expenses.  *See Special Master Award* [#293] at 6-8.